IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| EVA LYNN BLAIR,<br>    Plaintiff, | *<br>*<br>*<br>*<br>* |
| v. | *   Civil Action No. 8:09-cv-00906-AW |
| NATIONAL CITY MORTGAGE<br>    CORPORATION WELFARE<br>    BENEFITS PLAN., *et al.*,<br>    Defendants. | *<br>*<br>*<br>*<br>* |

**************************************************************************

**Memorandum Opinion**

Plaintiff, Eva Lynn Blair, brought this action against Defendants National City Corporation ("National") and The Liberty Life Assurance Co. of Boston a/k/a Liberty Mutual Group ("Liberty") for wrongly terminating the Plaintiff's long-term disability ("LTD") benefits. Specifically, the Plaintiff is seeking to recover LTD benefits pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132(a)(1)(B). Pending before the Court is the Defendants' Motion for Summary Judgment. Doc. No. 29. For the reasons articulated below, the Court GRANTS the Defendants' motion.

    **I.**     **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff worked as a Sales Support Assistant for National, and therefore she participated in the National City Corporation Welfare Benefits Plan ("Plan"). *See* Doc. No. 29-6 ("Administrative Record," or "AR"). Liberty is the underwriter of the Plan and is responsible for all aspects of claim administration. *See* Compl. ¶ 6. In particular, the Plan is an employee welfare benefit plan as defined by ERISA and created pursuant to section 1002(1). *See* 29 U.S.C. §

1

1002(1); AR at 554. Under the terms of the Plan, a participant is eligible for LTD benefits when he or she becomes injured or ill while covered by the Plan. AR at 437. The injury or illness must prevent the participant from performing the functions of his or her position with National or a job with equivalent duties and responsibilities. *Id.* at 437. The Plan Administrator, National, determines whether the participant's disability meets the above requirements. *See id.* at 437, 454.

On January 4, 2007, Plaintiff reported to National that she could no longer perform full-time work due to her medical condition,[1] and thus she submitted a claim for short-term benefits. *See* AR at 24. Short-term benefits were granted by Liberty to the Plaintiff on March 1, 2007 and made retroactive to February 5, 2007. *See id.* at 18. Shortly thereafter, on March 18, 2007, Plaintiff sent a letter to Liberty stating that she was unable to work beyond July 4, 2007. *See id.* at 125-26. Consequently, she requested LTD benefits. *See id.* After an exhaustive review, Liberty determined on October 10, 2007 that the Plaintiff was eligible for LTD benefits. *Id.* at 3. Liberty sent an approval letter to the Plaintiff on the same day, which outlined the criteria for receiving LTD benefits. *Id.* at 90. Specifically, Liberty noted that "payment of future benefits depends on certification of continuing disability, and on other applicable plan provisions. If you no longer meet the plan requirements . . . your employment may be terminated at that time." *Id.*

On October 22, 2007, the Plaintiff informed Liberty that she was working part-time for Catriona's Castle. *See id.* at 78. On the request of Liberty, Plaintiff faxed a handwritten paystub, which demonstrated that the Plaintiff worked for Catriona's Castle beginning September 15, 2007. *See id.* at 89. On October 23, 2007, Liberty determines that the Plaintiff's work with Catriona's Castle was not approved under the Plan and that her LTD benefits were no longer payable. *See id.* at 78, 446. As a result, Liberty notified the Plaintiff by letter that it was denying

---

[1] Plaintiff suffers from sensory fibromyalgia, peripheral neuropathy, osteoarthritis, degenerative disk disease of both the lumbar and cervical spine, and restless legs syndrome. *See* AR at 82.

her LTD benefits. *Id*. at 77-79. Liberty spoke directly to the Plaintiff about her part-time job and how it violated the terms of the Plan on October 25, 2007. *Id.* at 2.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III. ANALYSIS

As a preliminary matter, the parties dispute the appropriate standard of review. Ordinarily, when a plan gives the administrator discretionary authority to determine eligibility for benefits, a denial of benefits under ERISA section 1132(a)(1)(B) is to be reviewed by an arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, the Plaintiff asserts that the appropriate standard of review is *de novo* because Liberty does not have the discretionary authority to interpret the plan. Second, even if *de novo* review does not apply, she urges ~~that~~ the Court ~~should~~ to apply a lower level of deference to the administrator's determination because National City serves as both Plan Administrator and Payor

3

of the LTD Benefits, thereby creating a conflict of interest. Nevertheless, the Court does not need to address the merits of these arguments, as it is prepared to grant the Defendants' motion even under a non-deferential *de novo* standard.

The Defendants have convincingly demonstrated that there is no issue of material fact. By the express provisions of the Twelfth Amended and Restated National City Welfare Benefits Plan, LTD benefits are paid "until the earliest to occur of the following: . . . b) the date the Participant becomes engaged in gainful employment other than as described in subsection 6.3 and other than any approved by the Named Fiduciary as a Qualified Rehabilitation Program."[2] AR at 539 [hereinafter "Termination Clause"]. In this instance, the Plaintiff worked for Catriona's Castle before and after her LTD benefits were approved. *See id.* at 3, 78. Because she was in violation of the Plan's conditions for LTD benefits, Liberty properly denied such benefits.

In an effort to counter the Defendants' Motion for Summary Judgment, the Plaintiff raises four arguments. First, the Plaintiff asserts that Liberty's decision was unreasonable because Liberty "has no deliberative procedure for determining whether a participant is continuing to be eligible for LTD benefits." Doc. No. 35 at 12-13. Second, the Plaintiff contends that her benefits were wrongly terminated because her work at Catriona's Castle did not have the same responsibilities as her job at National. Additionally, the Plaintiff argues that the conditions pertaining to LTD benefits do not address the circumstances and events that occur after the elimination period[3] but before an LTD benefit is granted. Therefore, since a participant may work part-time while receiving an STD benefit, the Plaintiff alleges that it is reasonable to

---

[2] Section 6.3 addresses the Partially-Disabled program. The Defendants state that the Plaintiff did not receive, at any time, Partial Disability payments nor claimed Partial Disability. *See* Doc. No. 29-1 n.12. At no point in either the Complaint or the opposition to the Defendants' Motion for Summary Judgment has the Plaintiff claimed that she was a participant of the Partially-Disabled Program.

[3] The LTD plan pays monthly benefits so that the participant has a source of income starting after he or she has been either partially or totally disabled for 26 weeks. This period of 26 weeks is known as the "elimination period." *See* AR at 437.

believe that a participant can work part-time until an actual LTD benefit is granted. Finally, the Plaintiff argues that Liberty's decision to deny LTD benefits was unsupported by the Plaintiff's medical records.

These arguments arguably create a genuine dispute of fact regarding some of the issues raised in Defendants' motion for summary judgment, such as Defendants' assertion that Plaintiff's work at Catriona's Castle proves that she was not, in fact, disabled. However, none of the Plaintiff's arguments address the central reason why the Defendants are entitled to summary judgment: the Termination Clause. It is undisputed that the Plaintiff worked at Catriona's Castle both before and after she was granted LTD benefits, and the Termination Clause expressly states that the Plaintiff is only entitled to benefits "until . . . the date the Participant becomes engaged in gainful employment other than . . . any approved by the Named Fiduciary as a Qualified Rehabilitation Program." AR at 539.

In light of the unambiguous language of the Plan's Termination Clause, the Court finds that the Plaintiff breached the Plan by being employed after her LTD benefits were granted. Accordingly, Plaintiff's LTD benefits were not wrongly terminated by Liberty, and Defendants' Motion for Summary Judgment should be granted

## IV.　CONCLUSION

For the reasons stated above, National and Liberty's Motion for Summary Judgment, *see* Doc. No. 29, is GRANTED. A separate Order will follow.

| | |
|---|---|
|   June 20, 2010   |       /s/                |
| Date | Alexander Williams, Jr. |
| | United States District Judge |

5